**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated, | § No. 3:24-cv-3090<br>§<br>§<br>§<br>§ |
| Plaintiffs, | §<br>§ |
| v. | §<br>§ |
| QUINTESSA LLC, an Oklahoma limited liability company, and SLOCUMB LAW FIRM, LLC, an Alabama limited liability company, | §<br>§<br>§<br>§<br>§ |
| Defendant. | |

---

### CLASS ACTION COMPLAINT

---

Plaintiff Kelly Pinn ("Pinn" or "Plaintiff") bring this class action complaint against Defendants Quintessa LLC ("Quintessa") and Slocumb Law Firm, LLC ("Slocumb," and together with Quintessa hereinafter jointly referred to as "Defendants") to stop Defendants' practice of making unsolicited telemarketing calls to telephone numbers listed on the national Do-No-Call Registry, using false outgoing telephone numbers ("spoofed" telephone numbers), and to obtain redress for all persons injured by this conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### Nature of the Case

1.      Plaintiff, individually and as proposed class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") for unsolicited, "spoofed" telemarketing calls

made by or on behalf of Defendants which deceptively market Defendants' services.

2.    Defendants' telemarketing also violates the Oklahoma Telephone Solicitation Act of 2022, 15 Okla. Stat. §§ 775C.1-6 ("OTSA"). On information and belief, Defendants made, arranged, or ratified telemarketing calls using an "automated system for the selection or dialing of telephone numbers" without the call recipients' prior express consent. 15 Okla. Stat. §§ 775C.3(A). Quintessa also spoofed its telemarketing calls, or caused the telemarketing calls to transmit false outgoing numbers. 15 Okla. Stat. §§ 775C.3(B) (prohibiting telemarketing calls "to fail to transmit or cause not to be transmitted the originating telephone number and [] name of the telephone solicitor"), 775C.4(B)(2) (prohibiting telemarketing "that deliberately displays a different caller identification number than the number from where the call is originating to conceal the true identity of the caller"). The OTSA provides a private right of action (including statutory damages of $500) for persons "aggrieved by a violation" of the OTSA. 15 Okla. Stat. §§ 775C.6(A)(2).

3.    Separately, Defendants' telemarketing violates Texas prohibitions against barratry and solicitation. Slocumb is a law firm offering professional legal services, and has hired Quintessa to solicit prospective clients (in and outside Texas) via telemarketing. Quintessa has issued a press release touting its "remarkable accomplishments in disrupting the personal injury legal lead delivery industry." *Lauren Von, CEO and Founder of Quintessa Marketing Named a Winner of the 2024 TITAN Women in Business Awards* (Apr. 10, 2024), at https://www.prnewswire.com/news-releases/lauren-von-ceo-and-founder-of-quintessa-marketing-named-a-winner-of-the-2024-titan-women-in-business-awards-302112078.html. Soliciting clients for attorneys via telemarketing violates Tex. Pen. Code § 38.12(a)(2). Pinn and others who were "solicited by conduct violating Section 38.12(a) [] but who did not enter into a

contract as a result of that conduct, may file a civil action" for a penalty of $10,000 and attorneys' fees under Tex. Gov't Code § 82.0651.

4.        Plaintiff, individually, and for class members (together, "Plaintiffs"), seeks an injunction and other equitable relief, and an award of statutory damages, and costs and reasonable attorneys' fees, to the members of the proposed classes.

## Parties

5.        Plaintiff Kelly Pinn is a resident of Texas. She is the subscriber of a residential telephone listed on the national Do Not Call list consistent with, on which she received numerous unsolicited telephone calls from Defendants.

6.        Defendant Quintessa LLC is an Oklahoma limited liability company, which lists its address with the Oklahoma Secretary of State as 1900 NW Expressway, Suite 1600, Oklahoma City, Oklahoma 73118.

7.        Defendant Slocumb Law Firm, LLC is an Alabamian limited liability company, which lists its address with the Texas Secretary of State as 1910 Pacific Avenue, Suite 15700, Dallas, Texas 75201.

## Jurisdiction and Venue

8.        The Court has federal subject matter jurisdiction under 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claim for violation of the Texas law relates to the same telemarketing activity as her federal claims.

9.        This Court has personal jurisdiction over the Defendants under Texas Civil Practice & Remedies Code § 17.042 because Defendants committed a tort in this state by directing their telemarketing to residents of Texas, including Plaintiff.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and because a substantial part of the events giving rise to the claim occurred in this District.

### The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227

11.     "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

12.     In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices. Pub. L. No. 102-243, (Dec. 20, 1991), *codified at* 47 U.S.C. § 227. *See also Mims*, 565 U.S. at 371 ("The Act bans certain practices invasive of privacy").

13.     The TCPA (via its implementing FCC regulations) prohibit calls to any number that is registered with the National Do-Not-Call Registry. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA provides a private right of action for damages and injunctive relief for such DNC violations. 47 U.S.C. § 227(c)(5).

14.     The National Do-Not-Call Registry allows residential telephone subscribers to register their telephone numbers with the Registry to indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing of the Registry "must be honored indefinitely or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15.     Defendants are liable under the TCPA. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot.*

*Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013). "Vicarious liability under the TCPA is governed by the federal common law of agency." *Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 743 (W.D. Tex. 2023). *Cf. id.* at 746 (describing TCPA liability for ratification, where defendant "knowingly accepted the benefits that flowed from the call campaign in the form of increased business"). *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("no cause to question" precept that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01 (vicarious liability "may be established by express authorization, implicit authorization, or ratification").

16.    The TCPA reflects Congress's intent to preserve the social norms that Americans answer calls to their telephone numbers. Abusive and deceptive robocalls like those used by Defendants are a scourge on modern society, and represent an increasing threat to American's continued use of the telephone system, which relies on the custom that people generally answer telephone calls to their telephone number. The TCPA's legislative history recognized the continued proliferation of telemarketing, left unchecked, would undermine that custom. "Unwanted calls are tainting the wanted ones and make us cringe at the thought of answering the telephone at night. . . .[I]t's a classic case of the bad apples spoiling the whole barrel." 137 Cong. Rec. H11,312 (daily ed. Nov. 26, 1991) (statement of Rep. Cooper); 137 Cong. Rec. H11,310 (daily ed. Nov. 26, 1991) (statement of Rep. Markey) (TCPA intended to protect privacy "before our home telephones become the receptacles of junk calls in the same way that junk mail often

inundates our mailboxes"). The situation has greatly worsened since the TCPA was first passed. Unless the situation improves, Americans will permanently acclimate to the telephone call as a fundamentally untrustworthy medium for free speech and stop answering unidentified telephone calls, frustrating the legislative intent behind the TCPA.

**Defendants' Illegal Telemarketing Calls**

17.    Defendants use telemarketers to solicit customers for Slocumb's legal services (including representation on personal injury claims) from across the country, including in Texas, through aggressive, outbound telemarketing campaigns. Slocumb compensates Quintessa for the clients it retains via telemarketing campaigns that Quintessa arranges for Slocumb.

18.    Defendants use illegal telemarketing campaigns to promote Slocumb's services. These telemarketing campaigns are conducted for Defendants' benefit and on their behalf. Defendants and their telemarketers initiate telemarketing calls from offshore call centers to telephone numbers on the Do-Not-Call registry, assess the recipient's need and/or interest in Slocumb's services, then transfer the recipients to an onshore call center operated by Defendants' actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers.

19.    Defendants systemically fail to honor the national Do Not Call List. Defendants do not have express consent to call telephone users whose telephone number is on the Do Not Call List.

20.    Defendants also use misleading or inaccurate caller identification information, including "spoofed" telephone numbers, to entice recipients to answer their telephone calls. This spoofing means call recipients are only able to avoid Defendants' unwanted calls by risking that they miss wanted calls.

21.    Nonetheless, Defendants made, and continues to make, these telemarketing calls

to individuals nationwide without their consent. Slocumb ratifies the telemarketers' conduct by retaining clients referred via telemarketing calls arranged by Quintessa. Quintessa ratifies the telemarketers' conduct by accepting payments from Slocumb for potential clients who speak with Slocumb and/or retain Slocumb for legal services at the end of the telemarketers' call, and by paying commission to these telemarketers, despite knowing that the calls resulting in the enrollment violated the TCPA. Defendants have knowingly and actively accepted money that originated through illegal telemarketing calls, and paid and/or approved payment of commissions to telemarketers for such calls.

22.     The telemarketers Defendants used to make any telemarketing calls were and are at all relevant times, acting as actual agents, ostensible agents, conspirators, partners and/or joint venturers and employees of Defendants, and the acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants.

23.     Defendants operate, manage, monitor, and/or control these telemarketing campaigns through the data collected about the telemarketing campaigns, and the feedback Defendants give to the telemarketers (including, ultimately, the commissions Defendants pay to their telemarketers). Defendants are legally responsible for ensuring it and/or any third-party telemarketers complied with the TCPA, even if they themselves did not itself make the calls. Defendants are vicariously liable for their agents' TCPA violations. Defendants not only controlled the result of the work, but also the manner and means by which it was accomplished through interim instructions. There is no material distinction between telemarketing calls made by Defendants and/or by call centers who are technically third parties.

## Plaintiff's Individual Allegations

24.     Pinn has received a long series of telemarketing calls where the caller used the identified itself as "Accidental Claim Helpline" and solicited legal representation on various personal injury claims. On June 4 (at 2:01pm and at 4:51pm) and June 5, 2024 (at 6:53pm), Pinn received calls (using caller IDs 817-962-6852, 223-306-1537, 539-489-4434, respectively) where the caller identified itself as "Accidental Claim Helpline," and offered compensation for car accident injuries.

25.     All of these calls contained a clear pause and/or connection noise before the caller began speaking, which on information and belief indicates Defendants used an automated system to select or dial the telephone numbers.

26.     On July 8, 2024, Pinn received calls using caller ID (205) 334-3326 at (2:00pm, 3:11pm, 3:57pm, and 4:30pm). During the 3:57pm call, the caller identified itself as "Accidental Plan Helpline" and solicited Pinn for legal representation on a personal injury claim. Having determined that Defendants would not stop calling her voluntarily, Pinn feigned interest in legal representation for a personal injury, stated her name was Annalise Fowler, and that she had been in a car accident on January 2024, and provided an email address. Pinn was transferred between several callers who spoke with a South Asian accent. These callers coached Pinn to lie, and state that she had clicked an online ad, rather than receiving a telemarketing call. Pinn was ultimately transferred to a caller named Oshea who indicated he was in Oklahoma City, who provided Slocumb's contact information.

27.     Later that day, Pinn received a text message which contained a link to https://accidentintakeforms.com/contract.aspx?case=67c6ddf1-f60e-46d1-8937-8cbc670575d446d1-8937-8cbc670575d4. A true and correct screenshot of that link shows a

retainer for legal services between Slocumb and "Annali Fowler."



The telephone number listed on accidentintakeforms.com is (855) 586-3446, which is associated

with Quintessa. *See Quintessa Marketing Chooses Iconic 50 Penn Place for New Headquarters*

(July 20, 2021), *at* https://www.pr.com/press-release/840970.

28.     On July 9, Pinn received two emails from Jaylene Hall

slocumblawintake@gmail.com which stated: "This is Jaylene with the Slocumb Law Firm. I

would like to connect you with one of our top attorneys who will begin pursuing your case. Our

office is open 7 days/week to serve our clients, please call us at 888-495-2811. We look forward

to representing you soon." Slocumb's telephone number is 888-495-2811.

29.     Between July 9 and July 22, 2024, Pinn received six text messages, all using

caller ID 405-977-4484 and the name "The Injury Help Network," which asked if Pinn had

completed Slocumb's retainer, and indicated Pinn could call or text back at 888-501-1788. All of

these text messages contain the identical language, which on information and belief indicates

Defendants used an automated system to select or dial the telephone numbers so texted.

30.     On information and belief, none of the outgoing telephone numbers that

Defendants provided during the calls alleged above were true and correct telephone numbers that

Defendants used and/or which could be used to contact Defendants.

31.     On information and belief, Quintessa and/or its telemarketers use "Accidental

Claim Helpline" and "The Injury Help Network" as trade names. On information and belief,

Quintessa uses different trade names and misleading or inaccurate caller identification

information, including "spoofed" telephone numbers (that is, replacing the actual originating number displayed to recipients caller ID systems—which could be used to reliably identify the vendors' calls—with a falsified ostensible outgoing telephone number), for different telemarketing campaigns.

32.     Defendants' use of different trade names helps them to attribute particular calls to specific telemarketing campaigns, but makes it difficult for consumers to do the same or even identify Defendants. Defendants' use of spoofing entices recipients to answer telephone calls that they would not otherwise answer, and makes it difficult to attribute particular calls to Defendants. These practices allow Defendants to evade accountability for their telemarketing activities, and make it difficult for call recipients to avoid or otherwise respond to Defendants' calls (for instance, asking to be placed on Defendants' own Do Not Call list). Call recipients are only able to avoid Defendants' unwanted calls if they risk missing wanted calls, and cannot identify which companies they have instructed not to call them.

33.     On information and belief, Defendants ratified TCPA violations by the telemarketers using the "Accidental Claim Helpline" and "The Injury Help Network" trade names by accepting their referrals by continuing to pay them commissions while willfully ignoring evidence that they used telemarketing which violated the TCPA and OTSA to develop those referrals.

34.     Pinn's telephone number has been registered with the National Do-Not-Call Registry for over ten years. Pinn uses this telephone number uses residential purposes. Pinn never provided her telephone number to Defendants or their agents for any purpose whatsoever as she never had a business relationship with them. Defendants and their agents did not otherwise obtain Pinn's prior express consent to make telemarketing calls to her telephone number. Pinn

was not a business associate, customer, or other person having an established relationship with Defendants, Defendants did not call to collect an existing obligation, and Pinn did not request Defendants to call (and, indeed, she was not aware of the Defendants prior to these calls). Defendants never had valid consent to call Pinn. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (requiring "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller"); 15 Okla. Stat. § 15-775C.2(3) (equivalent).

35.     Defendants' telemarketing inflicted actual injury on Pinn by invading her privacy. Defendants caused Pinn the harm inherent in unsolicited, harassing, and deceptive telemarketing calls (including emotional distress, aggravation, nuisance, loss of use of her telephone, wasted time, invasion of privacy, and diverting attention away from her daily activities).

## Class Action Allegations

36.     **DNC Class Definition:** Plaintiff brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following Class (the "DNC Class"):

> All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class.

Excluded from the DNC Class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend this class definition based on facts learned during discovery.

37.     **Texas Class Definition:** Plaintiff also brings this Complaint against Defendants,

pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following Class (the "Texas Class"):

> All persons who received a telemarketing call by or on behalf of Slocumb while the person were resided in Texas from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class.

Excluded from the Texas Class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend this class definition based on facts learned during discovery.

38.    **Numerosity:** The exact number of DNC and Texas Class members is unknown and is not available to Plaintiff at this time, but such information is readily ascertainable by Defendants and their agents' records. The DNC and Texas Classes are so numerous that joinder of all members is impractical. Plaintiff alleges that there are at least forty members of each Class.

39.    **Commonality:** Plaintiffs and the DNC and Texas Classes members share common experiences receiving calls by or on behalf of DNC and Texas's clients, respectively. They received multiple, incessant, uninvited calls for the purposes of marketing the services of DNC and Texas clients to their residential telephone numbers.

40.    **Predominance:** In addition, common questions of fact and law exist as to all Class members and predominate over the questions affecting only individual DNC and Texas Class members. Identification of the individuals who qualify as a member of the DNC and Texas Classes will be sufficient to establish liability to the class member. The predominant common questions include:

a. Whether Defendants and/or their agents made telephone calls to members of the DNC Class whose telephone numbers were registered with the national Do-Not-Call registry, and/or instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d) for making telemarketing calls;

b. Whether Defendants are vicariously liable for any calls by their agents;

c. Whether Defendants and/or their agents had legally effective consent to place telemarketing calls to Plaintiffs and Class members;

d. Whether Defendants used an "automated system for the selection or dialing of telephone numbers" without the call recipients' prior express consent, 15 Okla. Stat. §§ 775C.3(A);

e. Whether Defendants spoofed its telemarketing calls, 15 Okla. Stat. §§ 775C.3(B), 775C.4(B)(2);

f. Whether Defendants made telemarketing calls to Texas Class members which solicited clients for Slocumb;

g. Whether Plaintiffs and Class members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiffs and Class members are entitled to treble damages;

h. Whether Plaintiffs and Class members are entitled to injunctive relief and attorneys' fees and costs.

41.    **Typicality:** Plaintiff's claims are typical of the claims of the other Class members. Plaintiff is not different in any relevant way from any other Class members, and the relief they seek is common to the DNC and Texas Classes.

42.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes: Plaintiff's interests do not conflict with the interests of the other Class members. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the TCPA and other consumer protection laws, and they intend to prosecute this action vigorously.

43.    **Predominance and Superiority:** The DNC and Texas Classes alleged in this

Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

44.     **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class a whole. The policies of the Defendants challenged herein apply and affect members of each class uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiffs.

45.     **Injunctive Relief is Appropriate:** Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiffs and the DNC and Texas Class members for which they have no adequate remedy at law.

//

**FIRST CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(c)**
**Against All Defendants By Plaintiff, Individually, and on Behalf of the DNC Class)**

46.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

47.     Defendants are "persons" as defined by 47 U.S.C. § 153(39).

48.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action for injunctive relief and statutory damages of $500 per violation. 47 U.S.C. § 227(c)(5). Where "the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection," it "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount [otherwise] available . . ." *Id.*

49.     The FCC's TCPA regulation provides that "[n]o person or entity shall initiate any telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). This prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

50.     On information and belief, Defendants and/or their agents routinely make outgoing calls to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other DNC Class members.

51.     Defendants' violations are willful because Defendants knew that Plaintiffs and DNC Class members had not given prior express consent to receive telemarketing calls made to telephone numbers placed on the Do Not Call List and that Defendants called such telephone numbers, or benefitted from calls on their behalf. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

52.     Plaintiff Kelly Pinn, on her own behalf, and on behalf of the other the DNC Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

**SECOND CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(d)**
**Against All Defendants By Plaintiff, Individually, and on Behalf of the DNC Class)**

53.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

54.     The FCC's TCPA regulation also provides that

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> > (1)     Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> >
> > (2)     Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
> >
> > (3)     Recording, disclosure of do-not-call requests. If a person or entity

making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .

(4)    Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d). Again, this prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

55.    On information and belief, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(4) by making telephone calls for telemarketing purposes which actively concealed the name of the individual caller, Defendants' name, and a telephone number or address at which Defendants could be contacted. Specifically, Defendants and/or their agents use deceptive and misleading scripts (consistent with the individual allegations regarding Plaintiffs above) which fail to identify Defendants until after the telemarketer transfers the call.

56.    Defendants' violations are willful because Defendants knew (or deliberately and willfully avoided knowing) that the TCPA applied to their conduct, and (2) failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above, but still engaged in telemarketing to DNC Class members. Defendants used spoofed numbers in order to avoid liability for illicit telemarketing. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by

the Plaintiffs and the DNC Class members.

57.    Defendants either do not have a written policy for maintaining a do-not-call list, or do not provide it on demand. On information and belief, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(1) and/or (2) by failing to maintain a written policy for maintaining a do-not-call list and/or informing and training all personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list. Defendants' violations are willful because, e.g., they knew such conduct violated the TCPA.

58.    Plaintiff Kelly Pinn, on her own behalf, and on behalf of the other the DNC Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

**THIRD CAUSE OF ACTION**
**(Violation of 15 Okla. Stat. §§ 775C.3(A) Against All Defendants**
**By Plaintiff, Individually, and on Behalf of the DNC Class)**

59.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

60.    On information and belief, Defendants made, arranged, or ratified telemarketing calls using an "automated system for the selection or dialing of telephone numbers" without the call recipients' prior express consent. 15 Okla. Stat. § 775C.3(A).

61.    The OTSA law authorizes claims by a "called party who is aggrieved by a violation of this act" to enjoin the violation and recover "actual damages or Five Hundred Dollars ($500.00), whichever is greater." 15 Okla. Stat. § 775C.6(A). Moreover, if "the court finds that the defendant willfully or knowingly violated" the OTSA, it may "increase the amount of the award to an amount equal to not more than three times the amount" otherwise available.

15 Okla. Stat. § 775C.6(B).

62.     Defendants' OTSA violations are willful because Defendants knew (or deliberately and willfully avoided knowing) that they used an "automated system for the selection or dialing of telephone numbers" without the call recipients' prior express consent. 15 Okla. Stat. § 775C.3(A). Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the DNC Class members.

63.     Plaintiff Kelly Pinn, on her own behalf, and on behalf of the DNC Class members, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 15 Okla. Stat. § 775C.6(A) against Defendants.

**FOURTH CAUSE OF ACTION**
**(Violation of 15 Okla. Stat. §§ 775C.3(B), 775C.4(B)(2)**
**Against All Defendants By Plaintiff, Individually, and on Behalf of the DNC Class)**

64.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

65.     On information and belief, Defendants spoofed their telemarketing calls, or caused the telemarketing calls to transmit false outgoing numbers. 15 Okla. Stat. §§ 775C.3(B) (prohibiting telemarketing calls "to fail to transmit or cause not to be transmitted the originating telephone number and [] name of the telephone solicitor"), 775C.4(B)(2) (prohibiting telemarketing "that deliberately displays a different caller identification number than the number from where the call is originating to conceal the true identity of the caller").

66.     The OTSA authorizes claims by a "called party who is aggrieved by a violation of this act" to enjoin the violation and recover "actual damages or Five Hundred Dollars ($500.00), whichever is greater." 15 Okla. Stat. § 775C.6(A). Moreover, if "the court finds that the defendant willfully or knowingly violated" the OTSA, it may "increase the amount of the award

to an amount equal to not more than three times the amount" otherwise available. 15 Okla. Stat. § 775C.6(B).

67.     Defendants' OTSA violations are willful because Defendants knew (or deliberately and willfully avoided knowing) that their telemarketing calls used spoofed numbers. Defendants used spoofed numbers precisely in order to avoid liability for illicit telemarketing. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the DNC Class members.

68.     Plaintiff Kelly Pinn, on her own behalf, and on behalf of the DNC Class members, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 15 Okla. Stat. § 775C.6(A) against Defendants.

**FIFTH CAUSE OF ACTION**
**(Violation of Tex. Gov't Code § 82.0651 Against All Defendants**
**By Plaintiff, Individually, and on Behalf of the Texas Class)**

69.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

70.     Soliciting clients for attorneys via telemarketing violates Tex. Pen. Code § 38.12(a)(2). ("A person commits an offense if, with intent to obtain an economic benefit the person [] (2) solicits employment, either in person or by telephone, for himself or for another"). *Cf.* Tex. Pen. Code § 38.01(11) ("'Solicit employment' means to communicate [] by telephone with a prospective client [] concerning professional employment within the scope of a professional's license, registration, or certification arising out of a particular occurrence or event, or series of occurrences or events, or concerning an existing problem of the prospective client within the scope of the professional's license, registration, or certification, for the purpose of providing professional services to the prospective client, when neither the person receiving the

communication nor anyone acting on that person's behalf has requested the communication"), (12) ("'Professional' means an attorney").

71.     On information and belief, Slocumb paid Quintessa a commission or other such payment for clients that Slocumb was able to retain via the telemarketing alleged in this complaint. Paying or offering "a person money or anything of value to solicit employment" and accepting or agreeing to accept "money or anything of value to solicit employment" also violates Tex. Pen. Code § 38.12(a)(4), (6).

72.     Slocumb intended to obtain an economic benefit by telemarketing to Pinn and other Texas Class members, representing them on personal injury claims, and receiving a contingency fee work from such representation.

73.     Quintessa intended to obtain an economic benefit by telemarketing to Pinn and other Texas Class members, and receiving a commission or other payment from Slocumb for clients that Slocumb was able to retain via such telemarketing.

74.     Pinn and others who were "solicited by conduct violating Section 38.12(a) [] but who did not enter into a contract as a result of that conduct, may file a civil action" for a penalty of $10,000 and attorneys' fees under Tex. Gov't Code § 82.0651.

75.     Plaintiff Kelly Pinn, on her own behalf, and on behalf of the other the Texas Class members, seeks to recover civil penalties, as well as all reasonable costs under Tex. Gov't Code § 82.0651 against Defendants.

**WHEREFORE,** Plaintiff Kelly Pinn prays that the Court enter judgment and orders in Plaintiffs' favor and against Defendants Quintessa LLC and Slocumb Law Firm, LLC as follows:

       a.     An order certifying the DNC and Texas Classes, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the DNC and Texas Classes;

b.     Statutory damages as provided under 47 U.S.C. § 227(c)(5) and 15 Okla. Stat. § 775C.6(A) against Defendants in favor of Plaintiffs and the DNC Class, including trebled damages for willful and knowing violations;

c.     Statutory damages as provided under Tex. Gov't Code § 82.0651 against Defendants in favor of Plaintiffs and the Texas Class;

d.     Injunctive relief under 47 U.S.C. § 227(c)(5) and 15 Okla. Stat. § 775C.6(A) against Defendants in favor of Plaintiff and the DNC and Texas Classes;

e.     Such other and further relief as this Court may deem appropriate.

Dated: December 12, 2024          By:   s/Ethan Preston
                                        Ethan Preston (24091084)
                                        ep@eplaw.us
                                        PRESTON LAW OFFICES
                                        4054 McKinney Avenue, Suite 310
                                        Dallas, Texas 75204
                                        Telephone: (972) 564-8340
                                        Facsimile: (866) 509-1197

                                        *Attorneys for Plaintiff Kelly Pinn, on her own behalf, and behalf of all others similarly situated*

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: December 12, 2024          By:   s/Ethan Preston
                                        Ethan Preston (24091084)
                                        ep@eplaw.us
                                        PRESTON LAW OFFICES
                                        4054 McKinney Avenue, Suite 310
                                        Dallas, Texas 75204
                                        Telephone: (972) 564-8340
                                        Facsimile: (866) 509-1197

                                        *Attorneys for Plaintiff Kelly Pinn, on her own*
                                        *behalf, and behalf of all others similarly situated*