UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:24-CV-3090-B |
| QUINTESSA, LLC; INFOWORX DIRECT LLC; and RONALD PERLSTEIN, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Quintessa, LLC ("Quintessa")'s Motion to Dismiss (Doc. 21), Plaintiff Kelly Bland's[1] Motion for Leave to File a Supplemental Appendix (Doc. 34), and Defendants InfoWorx Direct LLC ("InfoWorx")'s and Ronald Perlstein's Motion to Dismiss (Doc. 36). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Quintessa's Motion to Dismiss, **DENIES AS MOOT** Bland's Motion for Leave to file a Supplemental Appendix, and **GRANTS IN PART** and **DENIES IN PART** InfoWorx's and Perlstein's Motion to Dismiss.

## I.

## BACKGROUND

This is a putative class action brought on behalf of some unwilling recipients of phone calls. In 1991, Congress passed the Telephone Consumer Protection Act ("TCPA") to protect consumers

---

[1] In the original Complaint, the Lead Plaintiff's name was listed as "Kelly Pinn," but her name is now "Kelly Bland." Accordingly, the Court will refer to her as Kelly Bland.

from abusive telemarketing practices. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 614 (2020). The TCPA empowered the Federal Communications Commission ("FCC") to promulgate various regulations "to protect residential telephone subscribers' privacy rights." *See* 47 U.S.C. § 227(c)(1). Bland alleges that the Defendants have violated several of these regulations. *See generally* Doc. 18, Am. Compl. One such regulation prohibits defendants from calling a residential phone number that is on the National Do-Not-Call Registry to solicit business. *Id.* ¶¶ 16–18; 47 C.F.R. § 64.1200(c)(2).

Bland alleges that she and her fellow class members have placed their phone numbers on the Do-Not-Call Registry. Doc. 18, Am. Compl., 1. She claims that they received phone calls from Defendants asking if the class members had recently suffered an injury and, if so, whether they needed legal representation. *Id.* ¶¶ 1–4. Specifically, Bland alleges that she received several phone calls to her phone number that is on the do-not-call list in June 2024 from "Accidental Claim Helpline" asking if she had recently been in a car accident. *Id.* ¶ 30. Bland alleges that she "told these callers that she was not interested, and to stop calling" her. *Id.*

Bland then received three calls on July 8 to her phone number that is on the do-not-call list. *Id.* ¶ 31. These phone calls were from different numbers than the June phone calls and said they were with "Accidental Plan Helpline (or something similar)." *Id.* ¶¶ 31–32. The telemarketers asked Bland if she needed "legal representation on a personal injury claim." *Id.* ¶ 32. During Bland's investigation, Quintessa acknowledged that InfoWorx placed the July 8 phone calls. *Id.* ¶ 46. Because she felt that Defendants would keep calling her unless Bland discovered who they were, "Bland feigned interest in legal representation for a personal injury." *Id.* ¶ 33. After talking with the

telemarketer and their direct supervisors, the teleworker transferred Bland to a Quintessa intake representative who referred Bland to a law firm. *Id.* ¶¶ 37, 39.

Bland alleges that "[p]rior to July 8, 2024, Bland did not provide any telephone numbers to Defendants or their agents for any purpose whatsoever as she never had a business relationship with them." *Id.* ¶ 53. Bland then alleges that she "did not request Defendants to call" her and that "Defendants never had valid consent to call Bland." *Id.*

Bland asserts five causes of action against Quintessa, InfoWorx, and Perlstein. Bland alleges that the phone calls she received in June and July violate several regulations promulgated under the TCPA. Doc. 18, Am. Compl., ¶¶ 69–80. Bland also alleges that Defendants violated Oklahoma and Texas law. *Id.* ¶¶ 81–97. All three Defendants moved to dismiss most of Bland's claims. Doc. 21, Mot. Dismiss, 1; Doc. 36, Mot. Dismiss, 1. The Court considers the Motions below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alteration omitted) (citation omitted). But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alteration omitted) (citation omitted).

## III.

## ANALYSIS

The Court first grants in part and denies in part Quintessa's Motion to Dismiss. The Court then grants in part and denies in part InfoWorx's and Perlstein's Motion to Dismiss. Next, the Court denies as moot Bland's Motion to file a Supplemental Appendix. Lastly, the Court grants Bland leave to file an Amended Complaint.

A.    *The Court Grants in Part and Denies in Part Quintessa's Motion to Dismiss.*

The Court denies Quintessa's Motion to Dismiss as to Count 1 of Bland's Amended Complaint and one theory in Count 2 of the Amended Complaint but grants Quintessa's Motion to Dismiss as to two theories asserted in Count 2 of Bland's Amended Complaint. Because the Court concludes that Bland stated a TCPA claim, the Court will not dismiss Bland's state-law claims, Counts 3, 4, and 5, for lack of subject-matter jurisdiction.

-4-

    1.  <u>Bland Adequately Alleged Count 1 of Her Amended Complaint that Quintessa<br>Violated 47 C.F.R. § 64.1200(c)(2).</u>

One FCC regulation prohibits telemarketers from calling a residential phone number that is on the National Do-Not-Call Registry to solicit business. 47 C.F.R. § 64.1200(c)(2). A defendant can be either directly or vicariously liable for violating § 64.1200(c)(2). *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023) (Rutherford, M.J.), *report and recommendation adopted*, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023) (Fish, J.). A defendant directly violates § 64.1200(c)(2) when it initiates a phone call to a number that is on the do-not-call list. *Cunningham v. Lifestyles Dev.*, LLC, No. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019), *report and recommendation adopted*, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019). The FCC has explained that a defendant initiates a phone call by "tak[ing] the steps necessary to physically place a telephone call." *Id.* (quoting *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6583 ¶ 26 (2013) (hereinafter "*Dish Network*")). And a defendant is vicariously liable for a third-party's violation of the TCPA if the defendant and third party have an agency relationship. *See Dish Network*, 28 F.C.C. Rcd. at 6584 ¶ 28. Bland has not adequately alleged that Quintessa is directly liable for the phone calls, but Bland has alleged that Quintessa is vicariously liable for the phone calls she received in July.

*i. Bland failed to allege that Quintessa is directly liable for the phone calls.*

As discussed above, a defendant only directly violates § 64.1200(c)(2) if it initiates a phone call attempting to solicit business to a phone number that is on the Do-Not-Call Registry. *Cunningham*, 2019 WL 4282039, at *3. Here, Bland has failed to allege that Quintessa is directly liable for the phone calls she received.

Bland alleges that she received phone calls from unnamed telemarketers in June and July. Doc. 18, Am. Compl., ¶¶ 30–31. She then alleges that Quintessa conceded that InfoWorx placed the July phone calls. *Id.* ¶ 46. She does not allege that Quintessa placed either the June or July phone calls. While she alleges that Quintessa and InfoWorx collectively participated in a scheme to conceal Quintessa's aggressive telemarketing campaigns, *id.* ¶ 41, this allegation does not allow the Court to draw the reasonable inference that any Quintessa employee took the steps necessary to initiate the July 8 phone calls. *See Dish Network*, 28 F.C.C.R. at 6583 ¶ 26. Thus, Bland has failed to allege that Quintessa is directly liable for the phone calls Bland received to her do-not-call number.

Bland argues that her allegations allow the Court to infer that "the telemarketers who called Bland were working for both Defendants." Doc. 28, Resp., 5 (emphasis omitted). The Court is not convinced. The allegations in the Amended Complaint only suggest that InfoWorx called Bland and eventually transferred Bland to Quintessa, but no allegation suggests that the telemarketers worked for Quintessa. Therefore, Bland has not alleged that Quintessa directly violated § 64.1200(c)(2).

> *ii. Bland adequately alleged that Quintessa is vicariously liable for InfoWorx's phone calls.*

Bland received three phone calls from InfoWorx on July 8. Doc. 18, Am. Compl., ¶ 31. All three of these phone calls were to Bland's phone number on the do-not-call list. *Id.* The Court must decide whether Bland has adequately alleged that Quintessa is vicariously liable for these three phone calls. To be vicariously liable for phone calls under the TCPA, the plaintiff must allege there was an agency relationship between the defendant and the third party that placed the phone calls. *Dish Network*, 28 F.C.C. Rcd. at 6584 ¶ 28.

Courts apply common law agency principles to determine whether there was an agency relationship between the defendant and the telemarketer. *Horton v. MultiPlan Inc.*, No. 3:23-CV-

02098-S-BT, 2024 WL 3380236, at *5 (N.D. Tex. June 7, 2024) (Rutherford, M.J.), *report and recommendation adopted*, 2024 WL 3378719 (N.D. Tex. July 11, 2024) (Scholer, J.). An agency relationship exists where a principal "manifests assent to an agent that the agent shall act on the principal's behalf and subject to the principal's control." *Ortega v. DiTommaso Inc.*, No. 5:24-CV-00369-JKP, 2025 WL 440278, at *5 (W.D. Tex. Feb. 6, 2025) (citation modified). Because the existence of an agency relationship is an inherently fact-intensive inquiry, plaintiffs only need "to allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Cunningham v. Politi*, No. 4:18-CV-00362, 2019 WL 2519568, at *6 (E.D. Tex. Apr. 30, 2019), *report and recommendation adopted*, 2019 WL 2524736 (E.D. Tex. June 19, 2019) (quoting *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16-CV-1473, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016)).

In TCPA cases, courts within the Fifth Circuit have held that a plaintiff states a vicarious liability claim when the plaintiff alleges facts that trace the defendant to the caller. For example, plaintiffs have sufficiently alleged a defendant was vicariously liable for a third party's phone calls when the caller says they are calling on behalf of the defendant and the caller then transfers the plaintiff to the defendant. *See Politi*, 2019 WL 2519568 at * 7. Other courts have found that a plaintiff plausibly alleged an agency relationship when the caller asked the plaintiff if he was interested in a service and then transferred the plaintiff to the defendant for additional discussions regarding that service. *Ortega*, 2025 WL 440278, at *6 (denying a motion to dismiss because the original caller asked the plaintiff "questions about business loans" before transferring the plaintiff to the defendant's owner who "spoke with [the plaintiff] about a line of credit").

Here, Bland has sufficiently alleged that Quintessa and InfoWorx have an agency relationship. InfoWorx called Bland on July 8 and asked if she was interested in a specific service: legal representation for a personal injury claim. Doc. 18, Am. Compl., ¶ 32. When Bland said she had recently been in a car accident, InfoWorx transferred Bland to Quintessa's intake representative, Oshea. *Id.* ¶ 37. After InfoWorx transferred Bland to Quintessa, Quintessa helped Bland obtain legal representation for a personal injury claim, the same service that InfoWorx had spoken about to Bland. *Id.* ¶ 39. Further, the two companies gave Bland very similar names—Accidental Plan Helpline and the Accident Helpline—when she asked whom she was speaking with. The Court can draw the reasonable inference from these allegations that Quintessa and InfoWorx had an agency relationship. *See Ortega*, 2025 WL 440278, at *6.

Quintessa argues that Bland has not alleged sufficient facts to establish an agency relationship. Doc. 21, Mot. Dismiss, 15–21. Quintessa cites several cases to argue that "[c]ourts have widely recognized vicarious liability cannot attach in the TCPA context without the 'essential ingredient' of control." *Id.* at 16. However, most of these cases were not deciding a 12(b)(6) motion to dismiss. Three of the cases Quintessa cites were at the summary judgment stage.[2] *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (affirming a grant of summary judgment because the evidence established that there was no agency relationship between the defendant and the telemarketers); *In re Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 529 (N.D.W.Va.

---

[2] Throughout Quintessa's Motion to Dismiss, Quintessa argues that Bland cannot *prove* her claims or that she does not identify enough *evidence* to support her claims. Doc. 21, Mot. Dismiss, 6 ("[T]here is no evidence in the Amended Complaint that Quintessa violated Plaintiff's request."). However, Bland does not need to offer any proof or evidence to survive Quintessa's Motion to Dismiss. *See Roe v. E. Baton Rouge Par. Sch. Bd.*, No. CV 23-1324-SDD-SDJ, 2024 WL 4447229, at *11 (M.D. La. Oct. 8, 2024) ("Plaintiffs are not required to produce 'evidence' in support of their allegations in order to defeat a Rule 12(b)(6) motion."). Instead, the Court only assesses what Bland has *alleged* in her pleadings.

2016), *aff'd*, 885 F.3d 243 (4th Cir. 2018) (granting summary judgment when the evidence established that there was no agency relationship between the defendant and the telemarketers); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085–86 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) (same). And the fourth case Quintessa cites involved a district court assessing whether a third-party's acts were attributable to the defendant for personal jurisdiction purposes. *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020). Thus, none of these cases support Quintessa's position.

Quintessa cites district court cases outside of the Fifth Circuit that reasoned, at the 12(b)(6) stage, that "allegations that a plaintiff was transferred from a pre-recorded call or an initial telemarketer to a representative of the defendant are insufficient to support a claim for vicarious liability." Doc. 21, Mot. Dismiss, 17. One court found that "allegations that the initial call was transferred to Defendant's in-house telemarketer, are insufficient to establish that Defendant had the right to control the initiation of the telephone call to Plaintiff." *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 WL 4684209, at *4 (D.N.M. Sept. 28, 2018). However, Bland has not only alleged that InfoWorx transferred her to Quintessa. Instead, she has alleged facts that link InfoWorx and Quintessa, such as both companies offered to help Bland obtain legal representation for a personal injury claim, which the Court finds sufficient to plausibly allege an agency relationship.

Quintessa next asks the Court to consider its Master Services Agreement ("MSA") with InfoWorx. Doc. 21, Mot. Dismiss, 21. The MSA governs the relationship between Quintessa and InfoWorx.[3] Doc. 21-2, App'x, 1, 9–10. The MSA, according to Quintessa, establishes that Quintessa

---

[3] The MSA is actually a contract between Quintessa and InfoWorx's successor company IWDLLC, LLC. Doc. 21-2, App'x, 9.

did not control InfoWorx, which means the parties did not have an agency relationship as a matter of law. Doc. 21, Mot. Dismiss, 22–23. Quintessa says the Court can consider it because it is "integral" to Bland's Complaint. *Id.* at 21 n.10. The Court is not convinced.

The Court will not consider the MSA because it is not part of the pleadings, and the Court cannot take judicial notice of it. When resolving a 12(b)(6) motion to dismiss, courts generally only look at the pleadings and any documents attached to the pleadings. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). But courts can consider documents outside of the pleadings such as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). Here, the MSA is not part of the pleadings, it was not referenced in the Complaint, and the Court cannot take judicial notice of it because it is not a public record. Quintessa cites one Fifth Circuit case where the court explained that courts can consider documents that are "integral to the [plaintiff's] claim," but the Fifth Circuit there only considered "public records and prior court proceedings." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409–10 (5th Cir. 2013). And Quintessa does not cite any binding authority where a court considered a contract that was not mentioned in the complaint to resolve a 12(b)(6) motion to dismiss. Thus, the Court will not consider the MSA. Accordingly, Bland has adequately alleged that Quintessa is vicariously liable under 47 C.F.R. § 64.1200(c)(2).

       2.   <u>Bland Did Not Adequately Allege that Quintessa Violated 47 C.F.R. §§ 64.1200(d)(2) or (3), but Bland Adequately Alleged that Quintessa Violated 47 C.F.R. § 64.1200(d)(4).</u>

Count 2 of Bland's Amended Complaint alleges three theories of how Quintessa violated 47 C.F.R. § 64.1200(d). Doc. 18, Am. Compl., ¶¶ 76–80. Section 64.1200(d) requires companies

that call people for "telemarketing purposes" to "institute[] procedures for maintaining a list of persons who request not to receive . . . telemarking calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). Section 64.1200(d)(2) requires companies to train their employees about "the existence and use of the do-not-call list." *Id.* § 64.1200(d)(2). Section 64.1200(d)(3) requires companies to place someone on the company's internal do-not-call list if the person asks to not "receive calls from that person or entity." *Id.* § 64.1200(d)(3). And § 64.1200(d)(4) requires a telemarketer to provide their individual name, "the name of the person or entity" that the telemarketer is calling on behalf of, and the person or entity's phone number or physical address. *Id.* § 64.1200(d)(4). Bland alleges that Quintessa violated all three of these provisions. Doc. 18, Am. Compl., ¶¶ 76–80. The Court addresses each theory of Count 2 in turn.

*i. Bland has not alleged that Quintessa violated §§ 64.1200(d)(2) or (3).*

Bland has not sufficiently alleged that Quintessa failed to train its employees on the company's do-not-call list or that Quintessa failed to add Bland to its internal do-not-call list. Bland does not allege or argue that Quintessa violated §§ 64.1200(d)(2) or (3) in connection with the July 8 phone calls. *See* Doc. 28, Resp., 14; *see* Doc. 18, Am. Compl., ¶¶ 76–80. Instead, Bland only alleges that she told the June callers to stop calling her. Doc. 18, Am. Compl., ¶¶ 30–31. She then alleges that she continued to receive phone calls after she told the telemarketers to stop calling her. *See id.* These allegations are insufficient to state a claim that Quintessa violated §§ 64.1200(d)(2) and (3) because she has not alleged that the phone calls were made by Quintessa or InfoWorx.

Bland has not established that the June phone calls were made by Quintessa or InfoWorx. Bland alleges that she received several phone calls in June 2024 as part of "Defendants' June 2024 Telemarketing Campaign." *Id.* ¶ 30. She then claims that she "told these callers that she was not

interested, and to stop calling." *Id.* However, Bland does not allege any facts that allow the Court to draw the reasonable inference that Quintessa or InfoWorx placed these calls. While Quintessa admitted that InfoWorx called Bland on July 8, *id.* ¶ 46, Quintessa did not also say that InfoWorx placed the June calls. And the June phone calls came from different phone numbers than the July calls. *Id.* ¶¶ 30–31. Further, the June callers were from "Accidental Claim Helpline," while the July callers were from "Accidental Plan Helpline" and "the Accident Helpline." *Id.* ¶¶ 30, 32, 37.

Bland argues that she "can link Quintessa to the June calls" because of the similarity between the June and July calls. Doc. 29, Resp., 17. Bland contends that because both the June and July calls were promoting the same services with "the same syntax and overall nature," the June calls are attributable to Quintessa. *Id.* The Court disagrees. There are no allegations that tie any Defendant in this case to the June phone calls, and especially given how "pervasive[ly]" companies use phone calls to sell goods and services, *see Dish Network*, 28 F.C.C.R. at 6574 ¶ 2, the Court cannot draw the reasonable inference that Quintessa is responsible for the June phone calls simply because the June and July phone calls were offering the same services and had the same syntax.

Fundamentally, Bland has only alleged that the June and July telemarketers placed similar phone calls. And unlike the July 8 calls, there are no facts that can trace Quintessa to the June calls. On July 8, InfoWorx called Bland and then eventually transferred Bland to Quintessa. The June telemarketers, however, did not transfer Bland to Quintessa. Thus, even assuming that the similar nature of the phone calls allowed the Court to infer that the same telemarketers placed the June and July calls, there is nothing to suggest that the June calls were placed on Quintessa's behalf. Therefore, the June calls are not attributable to Quintessa.

Because Bland has failed to link Quintessa to the June phone calls, Bland has failed to sufficiently allege that Quintessa did not add her to the company's internal do-not-call list, which means she has not stated a claim for a violation of §§ 64.1200(d)(2) or (3).

*ii. Bland sufficiently alleged that Quintessa violated § 64.1200(d)(4).*

Section 64.1200(d)(4) requires a telemarketer to provide (1) their individual name, (2) "the name of the person or entity" that the telemarketer is calling on behalf of, and (3) the person or entity's phone number or physical address. 47 C.F.R. § 64.1200(d)(4). Because the Court concluded above that the June phone calls are not attributable to Quintessa or InfoWorx, the Court must determine whether Bland sufficiently alleged that Quintessa violated § 64.1200(d)(4) in connection with the July 8 calls. The Court finds that she did.

After speaking with InfoWorx's telemarketers, Bland was eventually transferred to Quintessa's intake representative, Oshea. *Id.* ¶ 37. Oshea told Bland his name and provided Quintessa's phone number. *Id.* But Oshea never told Bland that he worked for Quintessa. *Id.* Instead, Oshea said he was with "the Accident Helpline." *Id.* One of Quintessa's trade names is "Car Accident Helpline." Doc. 21-2, App'x, 2.[4]

Because Oshea did not provide the correct name of the entity that was calling Bland, Bland stated a claim for a § 64.1200(d)(4) violation. The parties appear to dispute whether a telemarketer providing the entity's trade name, as opposed to its official business name, would satisfy § 64.1200(d)(4). Bland argues that Quintessa violated § 64.1200(d)(4) because Oshea never said that he was calling on Quintessa's behalf. Doc. 28, Resp., 14–15. But Quintessa claims that Oshea

---

[4] The Court takes judicial notice of Quintessa's filings with the Oklahoma Secretary of State. *See Swindol v. Aurora Flight Sci. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015) (taking judicial notice of a party's filings with Mississippi's Secretary of State).

satisfied § 64.1200(d)(4)'s requirements because he told Bland that he was with "the Accident Helpline." Doc. 21, Mot. Dismiss, 8. The Court need not decide this dispute. Even if providing the entity's trade name is sufficient, Oshea did not provide Bland with Quintessa's trade name. Bland alleges that Oshea said he worked with "the Accident Helpline," Doc. 18, Am. Compl., ¶ 37, while Quintessa's trade name is actually "Car Accident Helpline," Doc. 21-2, App'x, 2. Thus, Oshea did not provide the correct name of the entity that was calling Bland. Therefore, Bland has stated a claim for a violation of 47 C.F.R. § 64.1200(d)(4).

Quintessa argues that it did not violate § 64.1200(d)(4) because Bland does not allege that she ever asked for the information required by § 64.1200(d)(4). Doc. 21, Mot. Dismiss, 7–8. This argument lacks merit. Section 64.1200(d)(4) requires telemarketers to provide certain information. 47 C.F.R. § 64.1200(d)(4). It does not say that telemarketers only need to provide this information if the person requests it. And while some courts have found that a telemarketer violated § 64.1200(d)(4) when it did not provide the required information after the plaintiff asked who was calling, those courts did not hold that a defendant only violates § 64.1200(d)(4) if the plaintiff requests this information. *See, e.g.*, *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-00337-M, 2017 WL 10486988, at *4 (N.D. Tex. Nov. 2, 2017) (Lynn, C.J.). Thus, the Court rejects this argument.

In sum, Bland has sufficiently alleged that Quintessa violated § 64.1200(d)(4) because Quintessa's intake representative did not tell Bland the correct name of the entity that called her.

\* \* \*

The Court concludes that Bland failed to adequately allege that Quintessa violated §§ 64.1200(d)(2) or (3), but Bland stated a claim for a violation of § 64.1200(d)(4). Thus, the Court

grants the Quintessa's Motion to Dismiss as to Count 2 of Bland's Amended Complaint with respect to Bland's §§ 64.1200(d)(2) and (3) theories but denies the Motion to Dismiss as to Count 2 with respect to Bland's § 64.1200(d)(4) theory.

> ### 3. The Court Will Not Dismiss Bland's Remaining State-Law Claims Asserted Against Quintessa.

Quintessa lastly moves to dismiss Bland's Oklahoma and Texas law claims, Counts 3, 4, and 5, for lack of subject-matter jurisdiction. Doc. 21, Mot. Dismiss, 8–9. Quintessa only argues that the Court lacks subject-matter jurisdiction over these three state-law claims because the Court should dismiss Bland's TCPA claims. *Id.* Because the Court concludes that Bland has sufficiently alleged two of her TCPA claims against Quintessa, the Court denies Quintessa's Motion to Dismiss the state-law claims for lack of subject-matter jurisdiction.

### B.    *The Court Grants in Part and Denies in Part InfoWorx's and Perlstein's Motion to Dismiss.*

InfoWorx and Perlstein moves to dismiss Bland's Amended Complaint. The Court finds that InfoWorx failed to establish that Bland sued the wrong entity. However, Bland did not sufficiently allege that Perlstein is personally liable for violating the TCPA.

> ### 1.    InfoWorx Failed to Establish that Bland Sued the Wrong Entity.

InfoWorx claims that Bland sued the wrong InfoWorx entity. Bland's allegations occurred in June and July 2024. Doc. 18, Am. Compl., ¶¶ 30–37. According to the Amended Complaint, InfoWorx was dissolved on April 25, 2023. *Id.* ¶ 7. In InfoWorx's Motion to Dismiss, InfoWorx claims that Bland should have sued IWDLLC, LLC ("IWDLLC"). Doc. 36, Mot. Dismiss, 9. However, InfoWorx did not include any official records to substantiate this assertion. *See id.* The only document that suggests IWDLLC should be the defendant instead of InfoWorx is the MSA, Doc. 21-2, App'x, 8, which the Court will not consider for the reasons discussed above.

Additionally, InfoWorx cites no authority that Florida LLCs cannot be sued after they are dissolved. Bland alleges that InfoWorx is still winding up, *see* Doc. 18, Am. Compl., ¶ 8, and, under Florida law,[5] LLCs can be sued while they are winding up their affairs, § 605.0709(2)(b), Fla. Stat. (2014). Thus, InfoWorx has failed to establish that Bland sued the wrong entity. Because InfoWorx did not otherwise challenge the merits of Bland's claims, the Court denies InfoWorx's and Perlstein's Motion to Dismiss as to the claims asserted against InfoWorx.

Bland suggests that the Court should substitute IWDLLC with InfoWorx. Doc. 37, Resp., 5–6. Specifically, "Bland moves to deem the eventual complete and unredacted copy of the MSA as a notice of errata to Bland's operative complaint." *Id.* at 6. It is unclear what Bland means by this, but to the extent Bland wishes to replace InfoWorx with IWDLLC, the Court will grant Bland leave to amend her complaint to join any additional defendants she believes should be named in this lawsuit

Bland then argues that if IWDLLC is added as a defendant to this lawsuit, it should not be allowed to file a Rule 12 motion. Doc. 37, Resp., 5–6. Instead, Bland contends that IWDLLC should have presented "arguments against its liability" in InfoWorx's Motion to Dismiss. *Id.* The Court disagrees. IWDLLC is not a defendant in this lawsuit, which means that IWDLLC could not move to dismiss Bland's claims. *See Servicio Marina Superior, L.L.C. v. OPI Int'l Contractors, Ltd.*, No. CIV.A. 12-2847, 2013 WL 1736250, at *3 (E.D. La. Apr. 22, 2013) (noting that it was "obvious" that a company "cannot move to dismiss an action to which is it not a party"). Thus, IWDLLC did not need to present any arguments that Bland had not stated a claim in InfoWorx's Motion to Dismiss.

---

[5] Florida law would apply to any issues regarding InfoWorx's internal affairs. TEX. BUS. ORGS. CODE § 1.102 (providing that courts apply the law of the state where the entity is organized to any questions regarding a company's internal affairs).

Therefore, the Court will not bar IWDLLC from later filing a Rule 12 motion if Bland elects to add IWDLLC to this lawsuit.

   2.   The Court Grants the Motion to Dismiss as to Bland's TCPA Claims Against Perlstein.

Perlstein moves to dismiss the two TCPA claims—Counts 1 and 2—that Bland asserts against him, arguing that Bland failed to allege facts sufficient to hold him personally liable. Doc. 36, Mot., 6–7. The Court agrees.

Courts in the Fifth Circuit have held that a company's officers can only be held personally liable for a company's TCPA violations if they directly and personally participated in the alleged TCPA violations or if they personally authorized the TCPA violations. *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001); *see also Cunningham v. Crosby Billing Servs., Corp.*, No. 418CV00043ALMCAN, 2018 WL 6424792, at *5 (E.D. Tex. Oct. 14, 2018), *report and recommendation adopted*, 2018 WL 6424695 (E.D. Tex. Dec. 5, 2018); *Cacho v. Amity One Debt Relief*, No. EP-24-CV-160-KC, 2024 WL 4594177, at *2 (W.D. Tex. Oct. 24, 2024). These courts have reasoned that a corporate officer is only personally liable for a company's TCPA violations if they are the "guiding spirt" or the "central figure" behind the violations of the TCPA. *Am. Blastfax, Inc.*, 164 F. Supp. 2d at 898. The Court finds their reasoning persuasive.

In *Cacho*, the Court found that a plaintiff had adequately alleged the corporate officer was personally liable for the TCPA violations because he "purchased the technology and equipment" the company used to make the phone calls, he "wrote the script that" the telemarketers used in the phone calls, and he "initiated the dialing campaign and directed how the calls were to be placed." 2024 WL 4594177, at *3. These allegations demonstrated that the officer "was himself personally

involved and took a central role in the alleged [TCPA] violations committed by [defendant's] employees." *Id.*

Here, the Amended Complaint only includes four allegations discussing Perlstein. First, Perlstein filed a notice of dissolution with the Florida Secretary of State "that ostensibly dissolved InfoWorx on April 25, 2023." Doc. 18, Am. Compl., ¶ 7. Second, "Perlstein is a resident and citizen of Florida." *Id.* ¶ 8. Third, "Perlstein was InfoWorx's registered agent and manager." *Id.* Fourth, "Perlstein has continued to operate InfoWorx's business . . . as a sole proprietor, manager, and the person appointed to wind InfoWorx up." *Id.* None of these allegations suggest that Perlstein is personally liable for any alleged TCPA violations. Bland does not allege that Perlstein authorized any of the telemarketing activities or that he directly called Bland. Nor does Bland allege that Perlstein wrote the script, directed the phone calls, or otherwise took a central role in any alleged TCPA violations. *See Cacho*, 2024 WL 4594177, at *3. Thus, Bland has failed to plausibly allege that Perlstein is personally liable for InfoWorx's alleged TCPA violations.

Bland makes several arguments for why she sufficiently alleged that Perlstein is personally liable for violating the TCPA. All lack merit. First, Bland argues that the Amended Complaint alleges that Perlstein "made all the calls which Bland received in July 2024." Doc. 37, Resp., 3 (citation modified). The Amended Complaint says no such thing. Bland never alleges that Perlstein called her or that he told any telemarketers to call her. *See* Doc. 18, Am. Compl., ¶¶ 41, 47.

Next, Bland claims that she defined "InfoWorx" to include InfoWorx, Perlstein, and InfoWorx's post-dissolution entity, which is allegedly a sole proprietorship. Doc. 37, Resp., 3. Because she defined "InfoWorx" to include Perlstein, Bland contends that she alleged Perlstein personally did everything that she alleged InfoWorx did. Bland is incorrect. For starters, Bland's

definition of "InfoWorx" did *not* include Perlstein because she only defined "InfoWorx" as "InfoWorx itself and its post-dissolution business." Doc. 18, Am. Compl., ¶ 8.

But even if Bland defined InfoWorx to include Perlstein, she would still fail to allege that he is personally liable because these allegations would constitute impermissible group pleading. "General allegations lumping all defendants together and failing to identify specific actions of individual defendants will not suffice to raise an inference of plausible liability against any individual defendant." *See Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *4 (W.D. Tex. Nov. 17, 2021). Thus, Bland cannot simply define "InfoWorx" as two entities and one person and then claim that all three are responsible for everything that Bland alleges InfoWorx did. Such an approach would constitute impermissible group pleading. *See id.*

The Fifth Circuit's prohibition on group pleading is especially important here. Bland is trying to allege that Perlstein is personally liable for InfoWorx's allegedly unlawful acts. To do so, Bland needs to allege that Perlstein was personally involved and took a central role in the phone calls that Bland received. *See Am. Blastfax, Inc.*, 164 F. Supp. 2d at 898. If the Court let Bland lump Perlstein and InfoWorx together, the Court would allow Bland to circumvent this requirement entirely. Therefore, the Court rejects this argument.

Bland then contends that because InfoWorx is now a sole proprietorship, she has alleged enough facts to hold Perlstein personally liable. *See* Doc. 37, Resp., 4 ("Everything InfoWorx did was necessarily done by Mr. Perlstein . . . ."). But she alleges nothing about how InfoWorx operated post-dissolution that would allow the Court to attribute all of InfoWorx's actions to Perlstein. Under Texas law,[6] a sole proprietor is personally liable for a sole proprietorship's debts. *Cf. Ideal Lease Serv.*,

---

[6] The Court notes that it is not clear whether Texas law would apply. InfoWorx was a Florida LLC, which would mean that Florida law would apply to any issues regarding InfoWorx's internal affairs. TEX.

*Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 952 (Tex. 1983) ("[A] sole proprietorship has a legal existence only in the identity of the sole proprietor."); *see also In re Allen*, No. 22-20178-RLJ7, 2025 WL 319925, at *4 (Bankr. N.D. Tex. Jan. 28, 2025) (Jones, J.) (noting that a sole proprietor "may be held liable in his personal capacity"). Thus, if InfoWorx was operating as a sole proprietorship in July 2024, Perlstein would potentially be liable for InfoWorx's TCPA violations. However, Bland has only included conclusory allegations that Perlstein serves as the "sole proprietor" of InfoWorx's post-dissolution business. Doc. 18, Am. Compl., ¶ 8. Because these allegations are conclusory, the Court will not accept them as true. *See Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020). Therefore, Bland has not sufficiently alleged that Perlstein served as InfoWorx's sole proprietors at the time of the alleged TCPA violations.

\* \* \*

In sum, InfoWorx failed to establish that Bland sued the wrong entity, and Bland has failed to allege that Perlstein is personally liable for any alleged TCPA violations. Accordingly, the Court denies the Motion to Dismiss as to the claims asserted against InfoWorx and grants the Motion to Dismiss as to Counts 1 and 2 of Bland's Amended Complaint that are asserted against Perlstein.

C.   *The Court Denies Bland's Motion for Leave to File a Supplemental Appendix as Moot.*

Bland moves for leave to file a supplemental appendix. Doc. 34, Mot. Leave, 1. In Quintessa's Reply in support of its Motion to Dismiss, Quintessa attached a letter that it sent Bland's counsel. Doc. 32-2, App'x, 20–25. In the letter, Quintessa disputes the truthfulness of Bland's allegations

---

BUS. ORGS. CODE § 1.102 (providing that courts apply the law of the state where the entity is organized to any questions regarding a company's internal affairs). However, the Amended Complaint does not include any facts indicating whether Florida law governs the internal affairs of InfoWorx's alleged post-dissolution entity. The Court need not answer this question, however, because Bland did not adequately allege that InfoWorx is now operating as a sole proprietorship.

and accuses Bland and her attorney of violating Rule 11. *Id.* at 20. Bland wishes to file a supplemental appendix that contains an email chain that supposedly responds to the contents of that letter. Doc. 34, Mot. Leave, 1. Bland did not explain how the email chain "[r]ebuts the [l]etter's [a]llegations." *Id.* at 2. Regardless, the Court denies Bland's Motion for Leave as Moot because the Court did not consider Quintessa's letter when ruling on the parties' Motions to Dismiss.

D.      *The Court Grants Bland Leave to Amend.*

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). District courts give plaintiffs leave to amend their complaints "when justice so requires." FED. R. CIV. P. 15(a)(2). This liberal standard, however, is "tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 566 (5th Cir. 2003).

When deciding whether to grant leave to amend, district courts consider the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (citations and emphasis omitted). Granting leave to amend a complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

The Court grants Bland leave to amend the 47 C.F.R. §§ 64.1200(d)(2) and (3) theories in Count 2 against Quintessa and both of her TCPA claims against Perlstein. While Bland failed to

adequately allege these claims, the deficiencies in her Amended Complaint do not appear to be incurable. *See Great Plains Tr.*, 313 F.3d at 329. Accordingly, the Court grants Bland leave to amend to remedy the deficiencies discussed in this Order and to join any additional defendants she believes should be part of this lawsuit.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Quintessa's Motion to Dismiss (Doc. 21) and InfoWorx's and Perlstein's Motion to Dismiss (Doc. 36). The Court **DENIES AS MOOT** Bland's Motion for Leave to File a Supplemental Appendix (Doc. 34).

With respect to Quintessa, the Court **DENIES** the Motion to Dismiss as to Count 1 of Bland's Amended Complaint and the 47 C.F.R. § 64.1200(d)(4) theory asserted in Count 2 of the Amended Complaint. The Court **GRANTS** Quintessa's Motion as to Bland's 47 C.F.R. §§ 64.1200(d)(2) and (3) theories asserted in Count 2 of her Amended Complaint. These claims are **DISMISSED WITHOUT PREJUDICE**. The Court **DENIES** Quintessa's Motion to Dismiss as to Counts 3, 4, and 5 of Bland's Amended Complaint.

With respect to InfoWorx's and Perlstein's Motion to Dismiss, the Court **DENIES** the Motion to Dismiss as to the claims asserted against InfoWorx. The Court **GRANTS** the Motion to Dismiss as to the TCPA claims asserted against Perlstein. Counts 1 and 2 of Bland's Amended Complaint, as asserted against Perlstein, are **DISMISSED WITHOUT PREJUDICE**.

Bland may file an amended complaint on or before August 22, 2025. If Bland elects to not file an Amended Complaint, all Defendants must file their answers on or before September 5, 2025.

SO ORDERED.

SIGNED: August 1, 2025.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE